USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__12/6/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIANNA SOROPOULOS,                              :
                                                  :          22-CV-8688 (RWL)
                               Plaintiff,         :
                                                  :
              - against -                         :          **DECISION AND ORDER:**
                                                  :          **SOCIAL SECURITY APPEAL**
                                                  :
COMMISSIONER OF SOCIAL SECURITY,                  :
                                                  :
                               Defendant.         :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Marianna Soropoulos ("Soropoulos"), represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Soropoulos is not entitled to disability insurance benefits ("DIB") for approximately the last four months of 2019. Soropoulos has moved for reversal and remand to the Administration for payment of benefits or further proceedings. The Commissioner has cross-moved for judgment on the pleadings, asking the Court to affirm the Commissioner's decision. For the reasons explained below, the Court GRANTS Soropoulos's motion and DENIES the Commissioner's motion.

## PROCEDURAL HISTORY

Soropoulos filed an application for DIB on September 16, 2020, alleging disability since August 15, 2019. (R. 167-73.[1]) As Soropoulos's last date insured was the end of

---

[1] "R." refers to the certified administrative record at Dkt. 16.

1

December of 2019 (R.180), the period of disability at issue is August 15 to December 31, 2019 (the "Relevant Period").  Soropoulos claimed disability due to several conditions: breast cancer DCIS;[2] arthritis of all joints; Sjogren's syndrome;[3] peripheral neuropathy of all four limbs;[4] Raynaud's disease;[5] redundant mitral heart valve and mitral regurgitation; chest pain syndrome; and fasciculation syndrome.[6]

The Administration denied Soropoulos's application on November 15, 2020 (R. 75-80), and denied reconsideration on February 19, 2021.  (R. 83-89.)  At Soropoulos's request, an administrative hearing was held before Administrative Law Judge ("ALJ")

---

[2] DCIS is an acronym for ductal carcinoma in situ.  *Ductal carcinoma in situ (DCIS)*, MAYO CLINIC,        https://www.mayoclinic.org/diseases-conditions/dcis/symptoms-causes/syc-20371889 (last visited Dec. 2, 2023).

[3] Sjogren's syndrome is a disorder of the immune system identified by its two most common symptoms – dry eyes and a dry mouth. The condition often accompanies other immune system disorders, such as rheumatoid arthritis and lupus.  *Sjogren's Syndrome*, MAYO       CLINIC,        https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216 (last visited Dec. 2, 2023).

[4] Peripheral neuropathy happens when the nerves that are located outside of the brain and spinal cord (peripheral nerves) are damaged. This condition often causes weakness, numbness and pain, usually in the hands and feet. It also can affect other areas and body functions including digestion and urination.  *Peripheral Neuropathy,* MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last visited Dec. 2, 2023).

[5] Raynaud's disease causes some areas of the body, such as fingers and toes, to feel numb and cold in response to cold temperatures or stress. In Raynaud's disease, smaller arteries that supply blood to the skin narrow. This limits blood flow to affected areas, which is     called     vasospasm.     *Raynaud's     Disease*,    MAYO     CLINIC, https://www.mayoclinic.org/diseases-conditions/raynauds-disease/symptoms-causes/syc-20363571 (last visited Dec. 2, 2023).

[6] Fasciculation is a visible, involuntary twitching of an individual muscle.  *Benign Fasciculation     Syndrome*,           CLEVELAND          CLINIC, https://my.clevelandclinic.org/health/diseases/24812-benign-fasciculation-syndrome (last visited Dec. 2, 2023).

Vincent M. Cascio on July 13, 2021. (R. 30-53.)  Soropoulos, represented by counsel, testified as did a vocational expert, Mary Pierce.  By decision dated August 11, 2021, the ALJ found that Soropoulos was not disabled for the Relevant Period of August 15 through December 31, 2019.  (R. 13-24.)  The ALJ's decision became the Commissioner's final decision on August 25, 2022, with the denial of Soropoulos's administrative appeal.  (R. 1-6.)

Soropoulos then filed this action on October 13, 2022, seeking district court review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).  (Dkt. 1.)  On October 27, 2022, the parties consented to my jurisdiction for all purposes.  (Dkts. 10-11.)  Soropoulos moved for judgment on the pleadings on April 19, 2023.  (Dkts. 22-23.)  The Commissioner cross-moved for judgment on the pleadings on June 5, 2023.  (Dkts. 25-26.)  Soropoulos did not file a reply.

## APPLICABLE LAW

### A.    Standard Of Review

A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner.   42 U.S.C. § 405(g); *Skrodzki v. Commissioner of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order).  The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (same).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'"  *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265

(2d Cir. 2008) (remanding for noncompliance with regulations)).  Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (remanding where the court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F. Supp.2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'"  *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Biestek v. Berryhill*, 587 U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Brault*, 683 F.3d at 448 (internal quotation marks omitted) (emphasis in original); *see also* 42 U.S.C. § 405(g) ("findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. § 423(d)(5)(B).  The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "'reconcile explicitly every conflicting shred of medical testimony,'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  The court must afford the Commissioner's determination considerable deference and "may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary Of Health And Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)); *Dunston v. Commissioner of Social Security,* No. 14-CV-3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015) (same)

(quoting *Jones*, 949 F.2d at 59), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. Apr. 2, 2015).   Accordingly, if a court finds that there is substantial evidence supporting the Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the claimant's position.   *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).   The court, however, will not defer to the Commissioner's determination if it is "the product of legal error."   *Dunston*, 2015 WL 54169 at *4 (internal quotation marks omitted) (citing, *inter alia*, *Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

## B.    Legal Principles Applicable To Disability Determinations

Under the Act, a person meeting certain requirements and considered to have a "disability" is entitled to disability benefits.   42 U.S.C. § 423(a)(1).   The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled and therefore entitled to disability benefits, the Commissioner conducts a five-step inquiry.   20 C.F.R. § 404.1520.[7]   First,

---

[7] Because this case is about Soropoulos's application for DIB benefits, the Court cites to regulatory standards for DIB determinations, which are found at 20 C.F.R. § 404.900, *et seq.*   Those regulations parallel the standards for Supplemental Security Income ("SSI"), which are found at 20 C.F.R. § 416.901, *et seq.*, or both.   *See Coulter v. Commissioner of Social Security*, No. 22-CV-1149, 2023 WL 3346505, at *2 n.1 (S.D.N.Y. May 10, 2023) ("The regulations for disability and disability insurance and supplemental security income

the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i), (b).  If so, the claimant is not eligible for benefits and the inquiry ceases.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a "severe impairment," which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c).  If the claimant does not have an impairment or combination of impairments that are "severe," the claimant is not entitled to benefits and the inquiry ends.  20 C.F.R. § 404.1520(c).

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combinations of impairments is, or medically equals, one of those included in the "listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant's impairment or impairments meet or medically equal one of those listings, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. § 404.1520(a)(4)(iii), (d).

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to step four and must assess the claimant's residual functional capacity ("RFC"), which is the claimant's ability to perform physical and mental work

---

benefits are virtually identical.  The DIB regulations are found at 20 C.F.R. § 404.900, *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901, *et seq.*") (quoting *Canter v. Saul*, No. 19-CV-00157, 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020)).

activities on a sustained basis despite his or her impairments.  The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)-(f).  If so, the claimant is not eligible for benefits and the inquiry stops.

If the claimant is not capable of performing prior work, the Commissioner must continue to step five and determine whether the claimant is capable of performing other available work.  20 C.F.R. § 404.1520(a)(4)(v), (h).  If the claimant, as limited by her RFC, can perform other available work, the claimant is not entitled to benefits.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant bears the burden of proof for the first four steps.  *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established that she is unable to perform her past work, however, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform."  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

## C.    Duty To Develop The Record

"Social Security proceedings are inquisitorial rather than adversarial."  *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  An ALJ must therefore "investigate the facts and develop the arguments both for and against granting benefits," *id.* at 111, and has "regulatory obligations to develop a complete medical record before making a disability determination."  *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *see* 20 C.F.R. § 404.1512(b)(1).  That obligation results from the non-adversarial nature of the instant proceedings and exists "even when … the claimant is represented by counsel."  *Pratts*, 94 F.3d at 37; *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing

on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record").

Accordingly, "[b]efore determining whether the Commissioner's conclusions are supported by substantial evidence," a court "must first be satisfied that the claimant has had a full hearing under the … regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations in original) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Whether an ALJ has satisfied his or her duty to develop the administrative record is a threshold question.  *See Sanchez v. Saul*, No. 18-CV-12102, 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020) ("As a threshold matter, … this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."), *R. & R. adopted*, 2020 WL 1330215 (S.D.N.Y. March 23, 2020).

## D.   Evaluation Of Medical Opinion Evidence

ALJs must consider medical opinion evidence of record.  *Rodriguez v. Colvin*, No. 12-CV-3931, 2014 WL 5038410, at *16 (S.D.N.Y. Sept. 29, 2014).  The standards applied depend on when an applicant filed their claim for benefits.  For claims filed prior to March 27, 2017, regulations require application of the so-called "treating physician rule," pursuant to which the opinion of a claimant's treating physician presumptively was entitled to "controlling weight."  20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  If the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must determine how much weight, if any, to give that opinion. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).   In doing so, the ALJ must "explicitly consider" the following, non-exclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting

the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(d)(2))).   While failure to explicitly apply the *Burgess* factors is a procedural error, a reviewing court will not reverse the Commissioner's decision when the Commissioner has given "good reasons" for its weight assignment.  *Estrella*, 925 F.3d at 96.  With respect to assigning weight to the opinions of non-treating physicians, an ALJ applying the earlier regulations must consider the same factors evaluated when the ALJ does not give controlling weight to a treating physician.  20 C.F.R. § 404.1527(c).

For claims filed on or after March 27, 2017, the regulations promulgated in 20 C.F.R. § 404.1520c apply.  Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight.  Instead, all medical opinions must be assessed for persuasiveness under the same standard of supportability and consistency with no presumption that one opinion carries more weight than another.  20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources").

The new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight, i.e., the extent to which a treating physician's opinion is supported by well-accepted medical evidence and not inconsistent with the rest of the record.  20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions … are supportability … and consistency").  In most

instances, the ALJ may, but is not required to, discuss the other factors previously required to assess medical opinion evidence (i.e., relationship with the claimant, specialization, and other relevant factors).  20 C.F.R. § 404.1520c(b)(2), (c)(3)-(5).  The ALJ must consider those additional factors if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported … and consistent with the record … but are not exactly the same."[8]  20 C.F.R. § 404.1520c(b)(3).

An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision.  20 C.F.R. § 404.1520c(b)(2); *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("in cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion") (emphasis in original).  As noted in the Administration's revisions to the regulations, "the articulation requirements in [the] final rules" are intended to "allow a … reviewing court to trace the

---

[8] More specifically, if medical opinions on the same issue are equally well-supported and consistent with the record but are not identical, the ALJ must "articulate how [he] considered the other most persuasive factors."  20 C.F.R. § 404.1520c(b)(3).  Of the remaining factors, the third is the relationship with the claimant, for which the ALJ must consider the (1) length of the treatment relationship, (2) frequency of examinations, (3) purpose of the treatment relationship, (4) extent of the treatment relationship, and (5) examining relationship.  *See* 20 C.F.R. § 404.1520c(c)(3).  The fourth factor – specialization – requires the ALJ to account for whether the medical opinion is provided by a specialist that has expertise in the area related to the medical issue.  *See* 20 C.F.R. § 404.1520c(c)(4).  Lastly, the fifth factor is a catchall, which accounts for "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  That "includes, but is not limited to, evidence showing a medical source has familiarity with other evidence in the claim or an understanding of [the Administration's] disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(5).

path of an adjudicator's reasoning …."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at 5858 (Jan. 18, 2017); *see also Amber v. Saul*, No. 20-CV-490, 2021 WL 2076219, at *4 (N.D.N.Y. Feb. 24, 2021) ("Although the new regulations eliminate the perceived hierarchy of medical sources … the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions'") (alterations in original) (quoting 20 C.F.R. § 404.1520c(a),(b)(1)).

Under the previous regulations, an ALJ's failure to consider the factors prescribed by the treating physician rule was grounds for remand.  Similarly, under the current regulations, an ALJ's failure to properly consider and apply the requisite factors is grounds for remand.  *See, e.g.*, *Rivera v. Commissioner Of Social Security*, No. 19-CV-4630, 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *R. & R. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"); *Andrew G. v. Commissioner of Social Security*, No. 19-CV-942, 2020 WL 5848776, at *6-9 (N.D.N.Y. Oct. 1, 2020) (remanding due to ALJ's failure to adequately explain the supportability or consistency factors that led her to her decision).  As Edwards' application post-dates March 27, 2017, the Court applies the revised regulations applicable to evaluation of medical opinions.

## FACTS

The Court sets forth below the facts most relevant to the discussion that follows.

## A.    Soropoulos's Conditions

During the Relevant Period, Soropoulos was 47 years old.  (R. 23.)  She was divorced, living with her mother and young daughter.  (R. 36.)  She worked as a surgical

physician's assistant until 2014.  (R. 23, 36-37.)  Having had a history of breast problems, however, she was let go from the hospital where she worked because of her concerns about changes that would increase her exposure to radiation and decided to stay at home and raise her daughter.  (R. 37-38.)

On August 15, 2019, Soropoulos was diagnosed with breast cancer.  (R. 38.)  In September 2019, she had a lumpectomy, followed by a second surgery in October 2019 to remove the remainder of the cancerous material.  (R. 38-39.)  She then underwent radiation treatment, which ended in December 2019.  (R. 39.)  As of the hearing, she was in remission.  (R. 39.)

Soropoulos has had a long-standing autoimmune disorder.  (R. 39.)  Up until her radiation treatments, Soropoulos's immune disease caused some peripheral neuropathy. (*Id.*)  But after radiation, her condition worsened and she was diagnosed with myositis.[9] (R. 40.)  She also has been diagnosed with, among other conditions, Sjogren's syndrome and anti-synthetase syndrome.[10] (R. 15.)

Soropoulos has treated primarily with two doctors for her autoimmune problems – Dr. Daniel DeMizio, a rheumatologist, and Dr. Christine Garcia, a pulmonologist.  (*See generally* R. 717-809, 1868-2041.)

---

[9] Myositis is a disease that makes the immune system attack the body's muscles. It causes chronic inflammation – swelling that comes and goes over a long time. Eventually, this inflammation makes the muscles feel increasingly weak. It can also cause muscle pain.  *Myositis*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/24170-myositis (last visited Dec. 2, 2023).

[10] Antisynthetase syndrome is a rare autoimmune disease that causes inflammation throughout the body and can affect muscles, joints, lungs, skin, and blood vessels. *Antisynthetase Syndrome*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/25159-antisynthetase-syndrome (last visited Dec. 2, 2023).

**B.      Medical Opinions**

On June 14, 2021, Dr. DeMizio completed an assessment of Soropoulos's RFC. (R. 1882-85.)  Dr. DeMizio assessed Soropoulos as having a number of symptoms, including severe muscle pain and weakness on a daily basis, dating back to approximately April 2019.  (R. 1882-83.)  He assessed Soropoulos as having only a "fair/guarded" prognosis and opined that she was incapable of even low stress work, could only sit and stand for brief periods, had severe limitations in repetitive reaching or handling, would need to take unscheduled breaks during an 8-hour work day, and would be absent from work more than four days a month.  (R. 1882-1885.)

Dr. Garcia also provided an RFC assessment dated June 14, 2021.  (R. 1886-89.) Dr. Garcia assessed Soropoulos as having numerous symptoms, including constant stabbing pain in her muscles, shortness of breath, fatigue, joint pain and swelling, Raynaud's syndrome, and peripheral numbness.  (R. 1886.)  Dr. Garcia determined that Soropoulos's conditions would constantly interfere with her ability to pay attention and concentrate and that she was incapable of performing even low-stress work.  (R. 1887.) Like Dr. DeMizio, Dr. Garcia opined that Soropoulos could only sit or stand for short periods at any one time and would need to take unscheduled breaks, that Soropoulos has severe limitation in repetitive reaching or handling, and that she would be absent from work more than four days a month.  (R. 1888-89.)

The record does not contain any opinions from consultative examiners or reviewers.  Two state agency consulting medical doctors who provided evaluations for purposes of determining Soropoulos's disability application each concluded that the

record did not contain sufficient medical evidence to rate Soropoulos's functional limitations for the Relevant Period.  (R. 59, 70.)

**C.    The ALJ's Decision**

The ALJ followed the requisite five-step analysis.  He determined that, for the Relevant Period, Soropoulos had multiple severe impairments, consisting of status-post left lumpectomy with re-excision surgery; Sjoren's syndrome; and anti-synthetase syndrome (myositis with interstitial lung disease).  (R. 15.)   The ALJ determined Soropoulos's Raynaud's syndrome to be non-severe.  (R. 15-16.)  He found that none of Soropoulos's conditions alone or together met or medically equaled a listed impairment.  (R. 16.)  He also determined that although Soropoulos's conditions could be expected to cause the symptoms she reported, her statements about the intensity, persistence, and limiting effects for her symptoms were not fully consistent with the record.  (R. 17-20.)  The ALJ assessed Soropoulos as having the following RFC during the Relevant Period:

> to perform light work … except she could occasionally climb ramps and stairs.  No climbing ladders, scaffolds, or ropes.  The claimant could occasionally balance, stoop, kneel, and crouch, and never crawl.   The claimant must avoid unprotected heights and hazardous machinery.  She could occasionally push/pull with the bilateral upper extremities.  She could frequently handle with the bilateral upper extremities.  The claimant must avoid exposure to respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas.

(R. 17.)  The ALJ then found, based on the vocational expert's testimony, that although Soropoulos could not perform her previous work as a physician's assistant, there was a sufficient quantity of jobs available to her, such as a "marker," a "router," and a "collator operator."  (R. 23-24.)  Accordingly, the ALJ concluded that Soropoulos was not disabled during the Relevant Period.  The ALJ's decision omits any reference to the vocational

expert's testimony that if an individual were to be absent just two days or more a month, "that would preclude all work in the national economy."  (R. 50.)

In making his determination, the ALJ rejected the opinions of both of Soropoulos's treating doctors, finding both "unpersuasive."  (R. 21-22.)  The ALJ concluded that Dr. DeMizio's opinion was not persuasive because a predecessor to Dr. Demizio was the treating rheumatologist during the Relevant Period; Dr. Demizio completed the RFC assessment a year-and-a-half after the Relevant Period ended; medical records show "minimal treatment and minimal objective findings regarding [Soropoulos's] autoimmune disorders during this time;" and upon examination, Soropoulos was "well appearing and in no acute distress;" had no tenderness, rash, or problems with her fingers; had normal motor strength and gait, and had normal mental status with a pleasant affect.  (R. 22.) The ALJ found Dr. Garcia's opinion unpersuasive for similar reasons and because Soropoulos "reported no pain after her surgeries, and after completing radiation, she was noted to feel well with no complaints."  (*Id.*)

The ALJ also rejected the assessment of the state agency medical consultants who concluded there was insufficient evidence to assess Soropoulos's RFC during the Relevant Period.  The ALJ found those assessments to be "partially persuasive" because, on one hand, the record shows that during the Relevant Period, Soropoulos had Sjogren's syndrome, anti-synthetase syndrome, and breast cancer, and underwent lumpectomy re-excision, and radiation, along with some treatment for her autoimmune disorders.  (R.

21.)  On the other hand, examinations during the Relevant Period were generally within normal limits, and Soropoulos was noted to feel well with no complaints.  (*Id.*)

## DISCUSSION

Soropoulos argues that the ALJ's decision must be overturned because he failed to sufficiently develop the record, improperly rejected the opinions of her treating physicians, and imposed his own lay judgment in lieu of any medical opinion.  The Commissioner argues otherwise, asserting that the ALJ's decision is supported by substantial evidence.  The Court agrees with Soropoulos.

The ALJ based his determination solely on his own evaluation of the record, not on the opinion of any medical source.  He found unpersuasive the opinions of both of Soropoulos's treating doctors.  And, although the ALJ purported to find "partially" persuasive the assessments of the two state agency doctors, he effectively rejected those assessments in their entirety.  The two state agency examiners determined that the record was insufficient to assess Soropoulos's RFC for the Relevant Period.  The ALJ, however, implicitly made his own determination that the medical record was sufficient to assess Soropoulos's RFC and proceeded to assess the medical evidence and determine Soropoulos's functional capacity without the guidance of any medical source opinion.

To be sure, an ALJ need not accept any one medical opinion in whole or in part, and need not render an RFC determination that mirrors any one medical opinion.  *Hayes v. Berryhill,* No. 16-CV-5259, 2017 WL 4326118, at *10 (S.D.N.Y. Sept. 28, 2017) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole") (quoting *Matta v.*

*Astrue*, 508 F. App'x 53 (2d Cir. 2013)); *see*, e.*g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (affirming ALJ's RFC assessment based on objective medical evidence after rejecting in part the opinions of both treating and non-examining sources).  And, in some cases, the medical record may be sufficient for an ALJ to determine the claimant's RFC even where the ALJ rejects a medical source opinion in full.  *See, e.g.*, *Monroe v. Commissioner of Social Security*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (affirming where ALJ rejected sole medical opinion concerning mental functioning).

But an ALJ may not, as the ALJ did here, simply reject medical opinions of record and then substitute his or her own medical judgment in their place.  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion").  "Put another way, ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record." *Russ v. Commissioner of Social Security*, 582 F.Supp.3d 151, 164 (S.D.N.Y. 2022) (internal quotation marks and citation omitted).  Here, the ALJ's rejection of all medical opinions and substitution of his own is of particular concern.

First, both Dr. DeMizio and Dr. Garcia opined that Soropoulos would have been absent from work more than four times a month.  In rejecting the doctors' entire functional evaluations of Soropoulos, the ALJ necessarily rejected that portion of their opinions.  Had he not done so, he would have had to conclude that Soropoulos was disabled.  The ALJ's decision does not even mention the vocational expert's testimony that an individual who would be absent more than just once a month would be precluded from finding available work and does not address whether Soropoulos would have been absent for four or fewer days per month.

18

The medical record suggests that the answer to that question is that Soropoulos would have been absent more than once a month.  During the Relevant Period, Soropoulos underwent, serially, two surgeries and radiation therapy.  Just the days taken to undergo those treatments show that Soropoulos likely would have been absent more than once a month during the Relevant Period.  The ALJ's decision proves as much.  In reviewing the medical record, the ALJ noted that Soropoulos had presented for medical assessment and treatment on September 11 and 19, 2019 (first surgery); October 2, 8 (second surgery), 15, and 29; and December 6 and 18 (R. 18-19).  As for November, Soropoulos started radiation therapy on November 4, and completed the course of treatment by December 18.[11] (R. 1798, 1819.)

In other words, the record demonstrates that for the Relevant Period, Soropoulos in fact potentially would have been absent at least twice a month for at least three (September, October and December), and perhaps all, of the four-and-a-half-month period, and thus unable to engage in gainful employment.[12]  The ALJ's failure to make

---

[11] The Court did not locate in the record evidence of the frequency, duration, or extent of Soropoulos's radiation treatment, or the extent to which it would have interfered with her ability to attend work.  On remand, the ALJ should confirm whether the record includes medical records for Soropoulos's radiation treatment.  If those medical records are not present, the ALJ should request them.

[12] The record does not reflect whether every medical procedure or appointment would have required missing a day of work, but the ALJ did not even make that inquiry and will need to do so on remand.  For instance, Soropoulos's surgeries undoubtedly would have required missing work.  That is less clear, however, with respect to follow-up visits and radiation treatment.  *See Radiation Therapy for Breast Cancer,* MAYO CLINIC, *https://www.mayoclinic.org/tests-procedures/radiation-therapy-for-breast-cancer/about /pac-20384940* (visited Dec. 2, 2023) (stating that a common treatment schedule for external radiation historically has included one radiation treatment a day, five days a week, for five or six weeks, although some doctors are recommending shorter treatment schedules, and noting that sessions generally require less than an hour, are painless, and can be followed with regular activity).

that determination was error.  *See, e.g.*, *Rivera v. Kijakazi*, No. 22-CV-6976, 2023 WL 6035665, at *11-13 (S.D.N.Y. Sept. 15, 2023) (remanding in part because ALJ did not properly assess extent of claimant's absenteeism due to need to attend medical treatment); *Garcia v. Kijakazi,* No. 21-CV-1895, 2022 WL 3442314, at *14 (S.D.N.Y. Aug. 11, 2022) (remanding and finding that, "[a]t the very least, the ALJ had a duty to … obtain medical source opinions on whether Garcia's impairments would lead to her being absent more than once a month"), *R. & R. adopted*, 2022 WL 3903182 (S.D.N.Y. Aug. 30, 2022); *Renee S. v. Commissioner of Social Security*, No. 20-CV-1546S, 2022 WL 2841916, at *5 (W.D.N.Y. July 21, 2022) (remanding where ALJ failed to account for absenteeism caused by claimant's monthly treatments); *Bellinger v. Commissioner of Social Security*, No. 3:17-CV-692, 2018 WL 6716092, at *2-4 (D. Conn. Dec. 21, 2018) (remanding where ALJ failed to address claimant's need to be absent for weekly treatments).

That is not the end of the matter.  As explained above, a disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Soropoulos does not claim to have been disabled prior to mid-August 2019.  Accordingly, the question arises as to whether Soropoulos, during the Relevant Period, had an impairment preventing her from working that could be expected to last until mid-August 2020.

That is a particularly complicated issue in the context of this case because of the interplay between Soropoulos's conditions.  During August to December 2019, Soropoulos endured two breast cancer surgeries and radiation.  The radiation in turn

severely exacerbated the symptoms and progression of her autoimmune diseases, the effects of which manifested during 2020.  As the ALJ noted in reciting medical findings from 2020 records, Soropoulos reported to her doctors that she was experiencing worsening myalgia and weakness following radiation; she had continuing numbness; a muscle biopsy demonstrated myofiber atrophy and interstitial inflammatory infiltrates consistent with polymyositis; findings were made of nailfold capillary abnormalities, Raynaud's syndrome, skin rash, and shortness of breath; and imaging was consistent with a diagnosis of anti-synthetase syndrome. (R. 19-20.)  Yet the ALJ's decision does not at all address Soropoulos's prospective absenteeism as of the end of the Relevant Period, thus compounding his error in not considering absenteeism during the Relevant Period.

Nor could the ALJ properly have done so without obtaining at least some medical opinion, even from a consulting doctor.  *See Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) ("while the ALJ may have given appropriate reasons for not according controlling weight to some of the opinions of Riccobono's treating physicians, she must still base her conclusion on **some** medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so") (emphasis in original).  The ALJ did not provide "overwhelmingly compelling reasons" for failing to base his decision on at least "some medical opinion" and therefore erred.

## CONCLUSION

Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g), Soropoulos's motion is GRANTED, and the Commissioner's motion is DENIED.  The Clerk of Court is directed to remand the case.  On remand, the ALJ must consider whether absenteeism due to

Soropoulos's impairments would have rendered her disabled.  Further, the ALJ must request medical source opinion from at least a consulting doctor.  Finally, the ALJ must confirm whether the record contains medical records from Soropoulos's radiation treatment, and, if not, seek to obtain them.

SO ORDERED.

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: December 6, 2023
      New York, New York

Copies transmitted on this date to all counsel of record.